J-S27033-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JACKIE  SINGER, | : | |
| | : | |
| Appellant | : | No. 1648 EDA 2017 |

Appeal from the Judgment of Sentence April 19, 2017
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0002043-2015

BEFORE:  SHOGAN, J., LAZARUS, J., and DUBOW, J.

MEMORANDUM BY DUBOW, J.:                    **FILED OCTOBER 17, 2018**

Appellant Jackie Singer seeks review of the Judgment of Sentence imposed by the Montgomery County court of common pleas following her convictions by a jury of Theft by Unlawful Taking, Receiving Stolen Property, and Forgery.[1]  She challenges the sufficiency and weight of the evidence, the amendments to the Criminal Information, and the length of her sentence of imprisonment.  After careful review, we adopt the well-written and comprehensive Opinion of the Honorable Gail A. Weilheimer as our own and affirm.

We summarize the following relevant facts as gleaned from the certified record and the trial court's Opinion.  From 2008 to 2014, Appellant was the manager of the Julie Robin Arouh Dental Practice in Jenkintown ("business")

_____

[1] 18 Pa.C.S. § 3291(a), 18 Pa.C.S. § 3925(a); and 18 Pa.C.S. § 4101(a)(2), respectively.

owned by Julie Arouh, DMD ("Victim"). As office manager, Appellant handled the finances of the dental practice. Only Appellant and the Victim had access to the business's bank accounts.

Between 2008 and 2014, Appellant stole $54,639.24 from the Victim's business. Appellant accomplished this by forging the Victim's name on checks associated with the business accounts without authorization in order to pay for personal expenses, including tuition for Appellant's child. Appellant also opened two credit cards in the name of the Victim's business that were linked to the business's financial accounts, again without the Victim's knowledge. Appellant used those cards for personal expenses, including vacations, meals, and entertainment, and then used the Victim's business accounts to pay the balances due on those credit card accounts. Detective Robert Wilsback conducted extensive investigation, which included serving search warrants on the companies from which Appellant had made purchases, comparing the records obtained showing Appellant's personal purchases to funds withdrawn from the business's bank accounts, and determining that Appellant paid off her personal credit card expenses using business funds.

On March 19, 2015, the Abington Township Police Department filed a Criminal Complaint and an affidavit of Probable Cause. The Commonwealth filed its first Bill of Information on May 18, 2015, charging Appellant with 22 offenses relating to theft, fraud, and conspiracy. On February 22, 2016, the Commonwealth filed its Bill of Particulars as ordered by the court.

On October 24, 2016, prior to the commencement of Appellant's jury trial, by agreement of counsel, the trial court granted the Commonwealth's Motion to Amend the Bill of Information, reducing the number of charges to 12. After the first day of trial, the court again allowed the Commonwealth to amend the information.

At her jury trial, Appellant testified, *inter alia*, that the Victim knew about her personal credit cards and that she reimbursed the Victim for all personal expenditures. She also testified that she did not keep a personal log of the expenses she was co-mingling. Appellant was unable to explain the discrepancy between the business's QuickBooks financial logs and the purchases/payments records managed by Appellant. Further, she testified that she took advantage of the scholarship program offered by the business when she forged the victim's name on a check to Holy Family University to pay the balance of her son's college tuition.

The Victim, the current office manager, and Detective Wilsbach, among others, testified. The testimony of the Victim and the current office manager contradicted testimony provided by Appellant.

After a five-day trial, the jury found Appellant guilty of three counts of Theft by Unlawful Taking or Disposition, three counts of Receiving Stolen Property, and one count of forgery. The court ordered a Pre-Sentence Investigation and Report.

On April 19, 2017, the court held sentencing and restitution hearings. The court sentenced Appellant to an aggregate term of 11½ to 23 months'

imprisonment, followed by 7 years' probation; the court ordered restitution in the amount of $29,639.24 payable to the Victim and $25,000 payable to the Victim's insurance company.

Appellant timely appealed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues for our review:

1. Whether the trial court erred by permitting the Commonwealth to amend the information mid-trial wherein a bill of particulars was furnished to the defense and the amendment was not included in the same?

2. Whether the verdict was against the weight of the evidence in that [Appellant] testified and explained her use of the credit cards, the pattern and practice of using the same and the course of dealing between her and the alleged victim?

3. With respect to Count 3, whether the evidence was sufficient to support the verdict wherein there was undisputed testimony that [the Victim] offered scholarship money to employees' children and that [Appellant's] son was full time student such that he woud be eligible to receive the same?

4. Whether the evidence was sufficient to support the jury's finding that [Appellant] was the individual making the unapproved purchases underlying the counts pertaining to bank transfers?

5. Whether the order of restitution was inappropriately calculated for the reasons summarized by trial counsel during sentencing, *i.e.*, the Royal Caribbean cruise charges, the $1,900 credit, and the $2,200 credit and the postal charges?

6. Whether the [J]udgment of [S]entence was excessive in that the Commonwealth only sought 6 to 23 months['] incarceration plus 4 years['] probation?[2]

---

[2] Appellant has included a Pa.R.A.P. 2119(f) Statement in her Brief. ***See*** Appellants Brief at 16-17.

Appellant's Brief at 11-12.

The trial court has provided a comprehensive Opinion addressing each of the issues raised, with reference to the relevant standards of appellate review, citation to and discussion of applicable case law, citation to the Notes of Testimony from the trial and the sentencing proceedings, and a thorough analysis of each of Appellant's issues. The certified record supports the court's analysis and we discern no abuse of discretion or errors of law. Accordingly, we adopt the trial court's Pa.R.A.P. 1925(a) Opinion as our own and affirm Appellant's Judgment of Sentence. *See* Trial Ct. Op., dated Nov. 21, 2017 (noting **(1)** Appellant's counsel agreed to all but one amendment to the information; the amendments with which counsel did not agree did not prejudice Appellant because the defense had prior notice and discovery of the facts underlying those amendments to counts 2, 6, and 11 relating to Capital One credit card thefts; none of the amendments to the Information added new criminal charges or allegations and one amendment reduced the number of charges; and amendment on the second day was allowable because the only witness to testify on the first day would not have been questioned about the issue of the amendment, *id.* at 45-48; **(2)** the jury's unanimous verdict was not so contrary to the evidence as to make the award of a new trial imperative in light of the testimony and the jury's determination that Appellant's testimonial defense as to her pattern and practice of using her credit cards was incredible and lacked evidentiary support, *id.* at 48-51; **(3)** the evidence was sufficient to show that Appellant stole $5,657.00 from the dental practice

to pay her child's tuition, emphasizing the testimony from Victim and the current office manager that scholarship funds are paid each semester directly to the child, and not the school, no more than $1,000 per year is paid to each scholarship recipient, and Appellant never applied for the scholarship for her children, *id.* at 51-53; **(4)** the evidence was sufficient to show that the Victim never authorized Appellant to open a Capital One or Barclaycard credit card for the dental business or with the dental practice listed on either card, and never authorized Appellant to use dental office funds to pay for Appellant's personal purchases made on those cards; Detective Wilsbach's investigation yielded sufficient evidence to demonstrate that Appellant illegally used the Victim's business funds to pay for Appellant's personal purchases, *id.* at 53-54; **(5)** the restitution payable to the Victim after a full restitution hearing is supported by the record and is neither speculative nor excessive, and the $25,000 restitution payable to the insurance company garnered no objections from defense counsel, *id.* at 54-55; and **(6)** Appellant's sentence was neither inappropriate nor excessive in that for her 6 years of illegal activity, she was sentenced to a term of incarceration of only 11½ to 23 months' imprisonment on one of the three Theft convictions, and received probation on the other two Theft convictions, the convictions for Receiving Stolen Property merged with Theft by Unlawful taking for sentencing purposes, and the court imposed no further penalty on the fraud conviction; further, the aggregate term of 7 years' probation would be terminable after 4 years if restitution was paid in full, *id.* at 56-58).

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>10/17/18</u>

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA      :          Common Pleas Court No.:
                                  :          CP-46-CR-0002043-2015
          v.                      :
                                  :          Superior Court No.:
JACKIE SINGER                     :          1648 EDA 2017
                                  :

---

## O P I N I O N

**WEILHEIMER, J.**                                      November 3̈1 , 2017

Appellant, Jackie Singer, instantly appeals from her Judgment of Sentence dated April 19, 2017, and the trial court's denials of her post-sentence motions on May 4, 2017, and May 5, 2017, respectively. Based upon the foregoing, Appellant's Judgment of Sentence and the trial court's denials of her post-sentence motions should be affirmed.

### FACTUAL HISTORY

The jury's findings in the instant matter can be summarized as follows: Between April 1, 2008, and April 3, 2014, Appellant did unlawfully and feloniously take; and did unlawfully and intentionally receive, retain, and dispose of, $54,639.24[1] from her previous employer ("Victim"), Julie Arouh, DMD, at Julie Robin Arouh Dental Practice located at 261 Old York Road in Jenkintown, Abington Township, Montgomery County, Pennsylvania 19406. During that time period, Appellant also did, with the intent to defraud, feloniously sign the name of Victim on checks associated with the business accounts, without authorization to do so.

---

[1] This sum comprises of United States currency (cash) from the dental office bank accounts, gift cards, and checks (cash equivalents).

38

## PROCEDURAL HISTORY

On March 19, 2015, the Criminal Complaint and Affidavit of Probable Cause were filed with this Court of Common Pleas for the County of Montgomery ("trial court"). ("Crim Complaint/Prob Cause", 3/19/15.) On May 18, 2015, the Commonwealth filed its first Bill of Information, charging Appellant with twenty-two (22) different criminal counts relating to theft, fraud, and conspiracy to commit the same. (*See* "Bill of Information", 5/18/15.)

On August 31, 2015, Appellant filed the "Writ of Habeaus [sic] Corpus and Motion to Quash Return of Transcript", wherein Appellant complained the evidence presented before the Honorable Judge Juanita A. Price of the Magisterial District Court 38-1-05 was insufficient to sustain a *prima facie* case on the charges that were held for court, and thus, violated her constitutional rights. (*See* "Def/Motion for Habeas Corpus", 8/31/15.) On the same day, Appellant also filed the "Motion Compelling the Commonwealth to File Bill of Particulars". (*See* "Def/Motion for Bills of Particular", 8/31/15; 1/28/16.)

On January 14, 2016, the trial court scheduled oral argument on Appellant's "Motion Compelling the Commonwealth to File Bill of Particulars" for January 19, 2016. ("Court Order", 1/14/16.) Following oral argument, on January 21, 2016, the trial court ordered the Commonwealth to provide Appellant with a Bill of Particulars "denoting each date or transaction for which it is alleged the [Appellant] engaged in criminal activity in accordance with the charges filed on the Bills of Information." ("Court Order", 1/22/16.) On February 22, 2016, the Commonwealth filed its "Bill of Particulars". ("Comm/Filing", 2/22/16.[2])

On October 21, 2016, the Commonwealth filed its "Motion to Amend the Bills of Information", wherein, *inter alia*, the Commonwealth sought to amend the Bills to accurately reflect the name of Appellant's co-conspirator, Donna Surgner[3] a/k/a Donna Stein (maiden name). ("Comm/Motion to Amend Bills of Information", 10/21/16.) Before the commencement of trial on October 24, 2016, and upon the agreement of counsel for both parties, the trial court granted the Commonwealth's Motion to

---

[2] *See* **Exhibit A** – "Commonwealth's Bill of Particulars", 2/22/16.
[3] Donna Surgner/Stein is Appellant's sister-in-law.

Amend, and the official Amended Bill of Information was docketed on November 4, 2016. (*See* N.T. –

Jury Trial at 3-4; "Bill of Information", 11/4/2016.) The trial court also granted amendments before the

start of the second and fourth day of trial (October 25, 2016, and October 27, 2016, respectively), as the

proposed amendments did not prejudice the Appellant because the Defense was previously on notice of

the factual bases underlying the proposed amendments and received discovery regarding the same. (*See*

N.T. – Jury Trial at 154-59; 619-20; 949-50.)

On October 24, 2016, the five (5)-day jury trial commenced before the undersigned, after which

Appellant was found guilty of the following: 18 Pennsylvania Consolidated Statutes Annotated (Pa.

C.S.A.), Section (§) 3291(a) – Theft by Unlawful Taking or Disposition (Counts 1-3); § 3925(a) –

Receiving Stolen Property (Counts 5-7); and § 4101(a)(2) – Forgery. (N.T. – Jury Trial, Days 1-5,

10/24/16-10/28/16; *see also* "Disposition – Corrected", 10/28/2016.) The trial court ordered that a Pre-

Sentence Investigation and Report be completed, Appellant waived the Ninety (90)-Day Rule, and

Appellant was released on same bail pending sentencing. ("Disposition – Corrected", 10/28/2016.)

On April 19, 2017, the Sentencing and full Restitution Hearings were held. (*See* N.T. –

Sentencing, 4/19/17.) Appellant was sentenced on Count 1 (Theft) to confinement for not less than

eleven-and-one-half (11½) months nor more than twenty-three (23) months in the Montgomery County

Correctional Facility ("MCCF"); to probation for one (1) year consecutive to the expiration of parole; and

to pay the costs of prosecution and $54,639.24 in restitution to Dr. Julie Arouh and CNA Financial.

("Order-Sentence/Penalty Imposed", 4/19/17.) On Count 2 (Theft), Appellant was sentenced

consecutively to Count 1 to three (3) years of probation and to pay the costs of prosecution. (*Id.*) On

Count 3 (Theft), Appellant was sentenced consecutively to Count 2 to three (3) years of probation and to

pay costs of prosecution. (*Id.*) Counts 5, 6, and 7 (Receiving Stolen Property) merged with Counts 1, 2,

and 3 (Theft) for purposes of sentencing. (*Id.*) The trial court imposed no further penalty on Count 9

(Forgery). (*Id.*) Appellant's total sentence, then, is 11½ to 23 months' imprisonment followed by seven

(7) years' probation. (*Id.*) The undersigned also granted Appellant's request to be furloughed from

November 9, 2017, at 9:00 A.M. to November 12, 2017, 12:00 P.M. to attend her daughter's wedding; and enabled Appellant's supervision to be terminated after four (4) years provided restitution is paid in full. (*Id.*)

On April 28, 2017, Appellant filed her "Post-Sentence Motion to Reconsider Defendant's Sentence", wherein Appellant requested the trial court to reconsider sentence because she is gainfully employed as a partner in a dental business venture and will have to make substantial restitution payments. ("Post-Sentence Motion", 4/28/17.) Appellant also alleged, *inter alia,* the effect of her sentence will make her unable to recover financially and that she is a substantial contributor to her household income. (*Id.*) Appellant ultimately sought relief in the form of a reconsidered, shorter sentence, smaller restitution, or a grant of work release. (*Id.*) On the same day, Appellant filed her "Petition in Support of Defendant's Motion to Reconsider Sentence", wherein Appellant alleged, *inter alia,* she has no prior record; restitution was in excess of $45,000.00; she accumulated a majority share of restitution and her willingness to submit the same to Clerk of Courts immediately; and that these funds represented a significant change of circumstances from the time of original sentencing on April 19, 2017. (*Id.*) On May 3, 2017, the trial court denied Appellant's "Motion to Reconsider Sentence" and Petition in support thereof ("Court Order", 5/4/17.)

On May 25, 2017, Appellant filed her Notice of Appeal with the Superior Court of Pennsylvania ("Superior Court"), and on June 1, 2017, Appellant filed her Concise Statement of Matters Complained of on Appeal ("Concise Statement") pursuant to Pennsylvania Rule of Appellate Procedure (Pa. R.A.P.), 1925(b), raising the following six (6) issues:

1. WHETHER THE TRIAL COURT ERRED BY PERMITTING THE COMMONWEALTH TO AMEND THE INFORMATION MID-TRIAL WHEREIN A BILL OF PARTICULARS WAS FURNISHED TO THE DEFENSE AND THE AMENDMENT WAS NOT INCLUDED IN THE SAME?

2. WHETHER THE VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE IN THAT THE DEFENDANT TESTIFIED AND EXPLAINED HER USE OF THE CREDIT CARDS, THE PATTERN AND PRACTICE OF USING THE SAME AND THE

41

COURSE OF DEALING BETWEEN HER AND THE ALLEGED VICTIM?

3.     WITH RESPECT TO COUNT 3, WHETHER THE EVIDENCE WAS SUFFICIENT TO SUPPORT THE VERDICT WHEREIN THERE WAS UNDISPUTED TESTIMONY THAT DR. AROUH OFFERED SCHOLARSHIP MONEY TO EMPLOYEES' CHILDREN AND THAT MS. SINGER'S SON WAS [SIC] FULL TIME STUDENT THAT HE WOULD BE ELIGIBLE TO RECEIVE THE SAME?

4.     WHETHER THE EVIDENCE WAS SUFFICIENT TO SUPPORT THE JURY'S FINDING THAT [APPELLANT] WAS THE INDIVIDUAL MAKING THE UNAPPROVED PURCHASES UNDERLYING THE COUNTS PERTAINING TO BANK TRANSFERS?

5.     WHETHER THE ORDER OF RESTITUTION WAS INAPPROPRIATELY CALCULATED FOR THE REASONS SUMMARIZED BY TRIAL COUNSEL DURING SENTENCING, *I.E.*, THE ROYAL CARIBBEAN CRUISE CHARGES, THE $1,900 CREDIT, THE $2,200 CREDIT AND THE POSTAL CHARGES? (*SEE* N.T. 4/19/17 AT 42.)

6.     WHETHER THE JUDGMENT OF SENTENCE WAS EXCESSIVE IN THAT THE COMMONWEALTH ONLY SOUGHT 6 TO 23 MONTHS INCARCERATION PLUS 4 YEARS OF PROBATION?

("Notice of Appeal", 5/25/17; "1925(b) Concise Statement", 6/1/17.)

*The rest of this page was intentionally left blank.*

## DISCUSSION

## I.    STANDARDS OF REVIEW

The issues put forth in Appellant's Concise Statement prompt the Superior Court to apply the following standards of review in the instant Appeal, *in seriatim*:

### A.    Amendment of a Bill of Information

"In reviewing the validity of criminal pleadings, [the Superior Court] look[s] more to substantial justice than to technicalities." *Commonwealth v. Hulehan*, 487 A.2d 980 (Pa. Super. 1985). Specifically, "[i]n reviewing a grant to amend an information, [the Superior Court] will look to determine whether the defendant is fully apprised of the charges against him." *Commonwealth v. Picchianti*, 600 A.2d 597, (Pa. Super. 1991), *appeal denied* 609 A.2d 168 (Pa. 1992). "Where crimes specified in the original information involve the same basic elements and arose out of the same factual situation as the crimes specified in the amended information, the defendant is deemed to have been placed on notice regarding his alleged criminal conduct *and no prejudice to defendant results*." *Id.* (emphasis added) (citations omitted).

### B.    Weight of Evidence

"An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court." *Commonwealth v. Stokes*, 78 A.3d 644, 650-51 (Pa. Super. 2013) (citing *Commonwealth v. Widmer ("Widmer II")*, 744 A.2d 745, 751-52 (Pa. 2000)). "An appellate court, therefore, reviews the exercise of discretion, not the underlying question whether the verdict is against the weight of the evidence." *Commonwealth v. Cousar*, 928 A.2d 1025, 1035-36 (Pa. 2007), *certiorari denied* 171 L.Ed.2d 235 (U.S. 2008) (citing *Commonwealth v. Keaton*, 729 A.2d 529, 540-41 (Pa. 1999)). The Superior Court, then, "may only reverse the [trial] court's verdict if it is so contrary to the evidence as to shock one's sense of justice." *Commonwealth v. Lofton*, 57 A.3d 1270, 1273 (Pa. Super. 2012). Thus, "[a]ppellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim." *Commonwealth v. Hunzer*, 868 A.2d 498 (Pa. Super. 2005), *reargument*

43

*denied, appeal denied* 880 A.2d 1237 (Pa. 2005); *see also generally Cousar, supra,* ("relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.").

### C. Sufficiency of Evidence

"In applying the standard of review for sufficiency of evidence claims, the Superior Court, "must view all evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth, as the verdict winner, and consider whether the trier of fact could have found that each element of the offense charged was supported by evidence and inference[s] sufficient to prove guilt beyond a reasonable doubt." *Commonwealth v. Brown*, 701 A.2d 252, 254 (Pa. Super. Ct. 1997) (citations omitted); *Cousar*, 928 A.2d at 1032-33. Moreover, the Superior Court, "may not substitute its judgment for that of the fact-finder; if the record contains support for the convictions they may not be disturbed." *Stokes*, 78 A.3d at 649.

### D. Restitution

"Challenges to the appropriateness of a sentence of restitution are generally considered challenges to the legality of the sentence." *Commonwealth v. Langston*, 904 A.2d 917, 921 (Pa. Super. 2006) (citation omitted) *abrogated in part, Commonwealth v. Holmes*, 155 A.3d 69 (Pa. Super. 2017). "An appeal from an order of restitution based upon a claim that a restitution order is unsupported by the record challenges the legality, rather than the discretionary aspects, of sentencing." *Holmes*, 155 A.3d at 78. "The determination as to whether the trial court imposed an illegal sentence is a question of law; our standard of review in cases dealing with questions of law is plenary." *Id.*

### E. Trial Court Discretion at Sentencing

A trial court's discretion in sentencing is broad, "and the reviewing court should not disturb [its] exercise of that discretion except for substantial reasons." *Commonwealth v. Widmer ("Widmer I")*, 667 A.2d 215 (Pa. Super. 1995), *reargument denied, appeal granted* 680 A.2d 1161, *reversed* 689 A.2d 211 (Pa. 1997). Specifically, a sentence "will not be disturbed unless it is outside statutory limits or manifestly excessive so as to inflict too severe a punishment." *Commonwealth v. Phillips*, 601 A.2d

816, *appeal granted* 610 A.2d 45, *affirmed* 633 A.2d 604. Moreover, "[a]n abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused." *Stumpf v. Nye*, 950 A.2d 1032, 1035–36 (Pa. Super. 2008).

### F. *Abuse of Discretion Standard, Generally*

In *Widmer II, supra*, the Superior Court reiterated the well-known definition of 'abuse of discretion' as follows:

> The term 'discretion' imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Id.* at 753.

II. **THE TRIAL COURT DID NOT ERR IN PERMITTING THE COMMONWEALTH TO AMEND THE BILL OF INFORMATION TO ACCURATELY REFLECT APPELLANT'S CO-CONSPIRATOR'S NAME, INCLUDING HER MAIDEN NAME, BECAUSE SUCH AN AMENDMENT DID NOT CHANGE THE BASIC ELEMENTS OF THE ALLEGED CRIMES CHARGED; THUS, APPELLANT HAD NOTICE OF THE SAME.**

The first issue raised in Appellant's Concise Statement alleged the trial court erred by permitting the Commonwealth to amend the Bill of Information after it had furnished the Bill of Particulars. (*See* "1925(b) Concise Statement" ¶ 1, 6/20/17.) The Bill of Information was first amended *pre-trial* per agreement between counsel for both parties as follows: (i) The co-conspirator, Donna Surgner's[4], name was changed to also include her maiden name, Donna Stein; (ii) The number of charges was reduced from twenty-two (22) counts to twelve (12) counts; and (iii) the amended Count 10 – Access Device Fraud was amended to include the specific type of access that was used in the perpetrated fraud, *i.e.*, the victim's

---

[4] Donna Surgner/Stein is Appellant's sister-in-law.

45

Wells Fargo bank account. *(See* N.T. – Jury Trial at 3-4, 10/24/16.) Moreover, the following amendments were granted by the undersigned during trial because the same did not prejudice Appellant, given the Defense had prior notice and discovery of the facts underlying these changes: (i) Over Defense Counsel's objection, the amended counts 2, 6, and 11, relating to the Capital One credit card thefts, were amended to include the factual basis that, on August 8, 2013, [Appellant] and Dr. Kathleen Wu registered the "Prestige Dental" practice with Wells Fargo Finance, charging $1,000.00 to Appellant's Capital One credit card, which was then paid for via the victim's linked Firstrust bank account; (ii) With Defense Counsel's agreement, the forgery charge (originally Count 13) that pertained to Appellant signing the name of Julie Arouh without their permission that was charged 18 Pa. C.S.A. § 4101(a)(1) was appropriately changed to subsection (a)(2). *(Id.* at 154-59, 10/25/16; 619-20, 10/27/16.) Given Defense Counsel agreed to all but one (1) of the amendments and the amendment with which he did not agree did not prejudice Appellant, the trial court did not err by permitting the Commonwealth to amend the Bill of Information.

Pennsylvania Rule of Criminal Procedure (Pa. R. Crim. P.) 564 permits the amendment of a bill of information following its issuance:

> The court may allow an information to be amended when there is a defect in form, the description of the offense(s), *the description of any person* or property, or the date charged, provided the information as amended does not charge an additional or different offense. Upon amendment, the court may grant such postponement of trial or other relief as is necessary in the interests of justice.

Pa. R. Crim. P. 564 (West, *effective until* December 21, 2017) (emphasis added); *see also Commonwealth v. Johnson*, 485 A.2d 397, 403 (Pa. Super. 1984) (citing Rule 229, *precursor to* Rule 564). The test to be applied in allowing amendment of an information is:

> [W]hether the crimes specified in the original indictment or information involve the same basic elements and evolved out of the same factual situation as the crimes specified in the amended indictment or information. If so, then the defendant is deemed to have been placed on notice regarding his alleged criminal conduct. [...]

46

*Commonwealth v. J.F.*, 800 A.2d 942 (Pa. Super. 2002), *appeal denied* 812 A.2d 1228 (Pa. 2002) (citation omitted). Moreover, Pennsylvania courts have allowed amendments to a bill of information on the day of trial and even at the conclusion of the Commonwealth's case-in-chief. *See, e.g., Commonwealth v. Sinclair*, 897 A.2d 1218 (Pa. Super. 2006) (holding defendant did not suffer prejudice as result of amendment of information on day of trial); *Commonwealth v. Watkins*, 361 A.2d 365 (Pa. Super. 1976) (holding defendant did not suffer prejudice as result of amendment of information at close of Commonwealth's case-in-chief); *Commonwealth v. Roser*, 914 A.2d 447 (Pa. Super. 2006) (holding defendant did not suffer prejudice as result of amendment of information immediately preceding closing arguments)

Here, the trial court did not err by allowing amendments to the Bill of Information because defense counsel agreed to the same except for one (1) amendment that occurred before the start of the second day of trial; however, the amendment with which Defense Counsel objected did not prejudice Appellant because the Defense had prior notice and discovery of the facts underlying the proposed changes. Moreover, Defense Counsel admitted the factual basis underlying the amendment would not have come up during his cross-examination of the witness, Filomena Bisacquino ("Mena"), from the first day of trial. As well, none of the amendments to the Bill of Information added new criminal charges or allegations; in fact, one (1) of the agreed amendments reduced the number of charges. (N.T. – Jury Trial at 3-4, 949.) The record from the second day of trial reflects the trial court's reasoning for allowing the one (1) amendment over Defense Counsel's objection as follows:

> THE COURT: [...] Okay. [Defense Counsel], did you have notice of this [factual basis] previously?
>
> [DEFENSE]: *Yes, I did, Your Honor.*
>
> THE COURT: Okay. What is your position regarding the Commonwealth's motion to amend?
>
> [DEFENSE]: [...] I object to allowing any amendment. At this point, trial has already begun. There has been a defense strategy already implemented. And as a result of that, Your Honor, I would ask the [c]ourt

47

|               |                                                                  |
|---------------|------------------------------------------------------------------|
|               | to deny Commonwealth's motion to amend the Bills at this time. [...] |

[...]

| THE COURT: | Okay.  Let me just ask, [Defense Counsel], the factual basis, was the thousand dollar charge for Prestige Dental something that you would have questioned yesterday's witness (Mena) about if you knew about it? |
|------------|--------------------------------------------------------------------|
| [DEFENSE]: | *No, Your Honor.*  In all candor to the [c]ourt, I don't believe that it would have come up with [Mena]. |
| THE COURT: | Thank you. [...] |

[...]

| THE COURT: | [...] [Defense Counsel], did you receive information about this specific charge in the discovery that was provided to you? |
|------------|--------------------------------------------------------------------|
| [DEFENSE]: | Yes, Your Honor, I did. |
| THE COURT: | Based on the fact that counsel was provided with the factual basis and the discovery, this Capital One credit card was addressed in the Bills of Information that were filed prior to the Bill of Particulars, as ordered by the [c]ourt, and that the first witness, [Mena], the current office manager, would not have been questioned about it, this [c]ourt will allow the amendment. |

(*Id.* at 154-59, 10/25/16 (emphasis added).) Thus, ultimately the Defense was on notice of the factual basis underlying this particular amendment that was made after the trial started, and because the factual basis would not have been the subject of defense counsel's cross-examination of Mena on the first day of trial, Appellant was not prejudiced by the amendment.

III. **THE JURY'S UNANIMOUS VERDICT WAS NOT AGAINST THE WEIGHT OF THE EVIDENCE.**

The second issue raised in Appellant's Concise Statement alleged the jury's unanimous verdict was against the weight of the evidence because, "Appellant testified and explained her use of the credit cards, the pattern and practice of using the same and the course of dealing between her and the alleged

48

victim[.]" *(See* "1925(b) Concise Statement" ¶ 2, 6/1/17.) For the reasons that will follow, the jury's unanimous verdict was not against the weight of the evidence.

"An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court." *Stokes,* 78 A.3d at 650-51 (citing *Widmer II,* 744 A.2d at 751-52). As such, the Superior Court, "may only reverse the [trial] court's verdict if it is so contrary to the evidence as to shock one's sense of justice." *Lofton,* 57 A.3d at 1273. Specifically, "[t]he test is not whether the [Superior Court] would have decided the case in the same way but whether the verdict is so contrary to the evidence as to make the award of a new trial imperative so that right may be given another opportunity to prevail." *Taylor,* 471 A.2d at 1230 (citations omitted). In analyzing the verdict in this way, the Superior Court must consider the fact finder, whether it is a jury or a judge, "is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." *See Cousar,* 928 A.2d at 1036.

Here, the jury found that between 2008 and 2014, Appellant, at the time the dental office manager for Dr. Arouh's ("Victim's") dental practice, opened up a personal Capital One and Barclaycard credit card with the dental practice name printed on them, without Victim's knowledge or authorization to do so, and on each of which Appellant made both personal charges, *e.g.,* family vacations, Coach and Tiffany purchases, and airfare; as well as, legitimate office charges, *e.g.,* dental equipment, postage, and office supplies. *(See* N.T. – Jury Trial at 29-148 (Filomena ("Mena") Bisacquino – current office manager[5]); 165-94 (Lindsay Mullin – hygienist); 194-425; 437-536; 542-51 (Dr. Julie Arouh); 584-608, 621-536 (Detective Robert Wilsbach).) Appellant then paid for these credit card expenses, including her personal expenditures, with funds from the dental offices' bank accounts, Wells Fargo and Firstrust, respectively. *(Id.)*

The jury's unanimous verdict was *not* so contrary to the evidence as to make the award of a new trial imperative because the jury found Appellant's testimonial defense as to her pattern and practice of using her credit cards, both incredible and lacking evidentiary support. *(See generally id.* at 758-918.)

---

[5] Following Appellant's termination from Victim's dental practice, Mena, the former front desk clerk, became the new office manager. *(Id.* at 29-30.)

Appellant incredibly testified Victim knew about Appellant's personal credit cards and knew Appellant's pattern and practice of using the same for personal and office expenses, despite Mena and Victim's credible testimony to the contrary. (*Id.*) Appellant further testified she reimbursed Victim for all the personal expenditures, despite the lack of any evidentiary support for the same. (*See id.* at 768, 778, 783, 791, 811, 825-26, 877-80, 882-83.) The jury was clearly and reasonably unconvinced by Appellant's narrative, given Mena, Lindsay Mullin, Victim, and even defense witness, Dr. Wu's, testimonies were largely consistent with each other, but inconsistent with Appellant's testimony; and because there was likewise no evidentiary support for Appellant's defense. (*See generally* N.T. – Jury Trial.)

Additionally, Appellant, could not credibly explain on cross-examination the lack of proof for her defense that she always reimbursed Victim in cash for Appellant's personal credit card expenditures:

[COMM.]: And you paid those personal purchases and that personal credit card through [Victim's] Wells Fargo business account; right?

[APPEL.]: Yes.

[COMM.]: Okay. And it's your testimony that you paid back [Victim] for all of those purchases in cash?

[APPEL.]: Yes.

[...]

[COMM.]: So let's see. Like, March 21, 2014, it says 'my charges $1,861.51.'

[APPEL.]: Yes.

[COMM.]: Is that correct?

[APPEL.]: Yes.

[COMM.]: So you walked into [Victim's] office and handed her $1,861.51; is that correct?

[APPEL.]: It wouldn't have been – there wouldn't have been change. It would have been rounded –

[COMM.]: Okay. Sorry.

[APPEL.]: -- to a number. Yes.

50

[COMM.]:     1,862?  That's what you would hand her?

[APPEL.]:    Maybe 1,860.

[COMM.]:     Okay.  So would that be, in twenties or hundreds or what amount?

[APPEL.]:    Whatever I had.

(*Id.* at 873:24-25; 874:2-6; 874:20-25, 875:2-11; *see also id.* at 875-77.)

Appellant also failed to explain on cross-examination the discrepancy between the dental office's financial QuickBooks logs and the purchases/payments records, which were managed by Appellant while she worked as the dental practice's office manager.  Appellant testified that she, as a bookkeeper, understands the importance of logging every transaction, as well as, the financial principle that one should not mix business and personal funds.  (*Id.* at 856-66.)  However, she later testified that she did not, in fact, keep a personal log of these expenses that she was co-mingling, despite knowing the importance of doing so.  (*Id.* at 869.)  Appellant also incredibly testified as to the lack of QuickBooks logs documenting the unauthorized credit card purchases; specifically, she testified, "I cannot explain to you what happened after I left there in 2014," which insinuated that someone went into QuickBooks and altered or deleted the credit card charges from the records.  (*Id.* at 872, 873:15-16.)  Therefore, the evidence of Appellant's illegal and unauthorized use of the dental office's funds to pay for her personal credit card expenses was overwhelming, her responding testimonial defense was highly incredible, and as such, the jury's verdict was not against the weight of the evidence.

## IV.  THE EVIDENCE PRESENTED AT TRIAL WAS SUFFICIENT TO SUPPORT THE JURY'S UNANIMOUS VERDICT.

The third and fourth issues raised in Appellant's Concise Statement alleged the evidence was insufficient to support the jury's unanimous verdict.  (*See* "1925(b) Concise Statement" ¶¶ 3-4, 6/1/17.)

"When considering whether evidence introduced at trial is sufficient to sustain a conviction, [the Superior Court] must view all evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth, as the verdict winner, and consider whether the trier of fact could have found that

51

each element of the offense charged was supported by evidence and inference[s] sufficient to prove guilt beyond a reasonable doubt." *Brown*, 701 A.2d at 254 (citations omitted); *Cousar*, 928 A.2d at 1032-33. "The Commonwealth may sustain its burden by proving the crime[s'] elements with evidence which is entirely circumstantial and the trier of fact, who determin[e] credibility of witnesses and the weight to give the evidence produced, is free to believe all, part, or none of the evidence." *Brown*, 701 A.2d at 254. *See also Stokes*, 78 A.3d at 649 (reasonable doubt necessarily entails that a conviction "must be based on more than mere suspicion or conjecture;" however, "the Commonwealth need not establish guilt to a mathematical certainty.") (citations omitted). During the Superior Court's review of "the sufficiency of the evidence, [it] may not substitute its judgment for that of the fact-finder; if the record contains support for the convictions they may not be disturbed." *Stokes, supra*.

For the reasons that will follow, the evidence presented at trial was sufficient to support the jury's unanimous verdict, such that Appellant illegally stole dental office funds to pay for her son's school tuition, as well as, made illegal fund transfers to cover her personal credit card expenses.

### A. First Sufficiency Issue – Scholarship Funds & Forged Check

The third issue raised by Appellant in her Concise Statement specifically alleged the evidence was insufficient to support the jury's unanimous verdict, "wherein there was undisputed testimony that [Victim] offered scholarship money to employees' children and that [Appellant's] son was [a] full[-]time student such that he would be eligible to receive the same[.]" *(See* "1925(b) Concise Statement" ¶ 3, 6/1/17.)

The evidence was sufficient to prove Appellant stole funds from the dental practice's business accounts to fund her son's tuition at *Holy Family*. There was little doubt that Victim's dental office had a program in place where full-time employees with children who were full-time students were eligible for a needs-based scholarship, which provided a maximum of $500.00 per Fall and Spring semesters. (N.T. – Jury Trial at 52-53, 55, 299-300.) However, there was doubt as to Appellant's defense that she simply took advantage of this scholarship program when she forged a check in Victim's name to an amount over

52

$5,000.00 to pay her son's tuition balance. Victim and Mena both testified that if an employee was eligible and received the scholarship, a check would be made out per semester *to the child*, not to the parent and not to the school and then logged into the QuickBooks ledger. (*Id.* at 52-53, 55, 301.) They both also testified that Appellant never applied for this scholarship for either of her two children and she actually stated at one point when her son was in community college that she would not take that gift from others who needed it more. (*Id.* at 54, 92, 299, 301.) In Appellant's case, she illegally forged a check with Victim's name for her son, Robert Singer's, tuition but the check was made out to *Holy Family*, not to the student and it was for $5,657.00, despite the fact the program would only ever pay a max of $1,000.00 annually. (*Id.* at 298-99, 300, 302 (Exhibit C-11).) Victim testified Appellant had no authority to write checks for tuition and was never given permission to forge her signature; the only time a check could be signed without Victim would be using the office signature stamp and that had to be pre-authorized. (*Id* at 518-23.) Therefore, the evidence was sufficient to support Appellant's guilty verdict with respect to the theft of Victim's business funds to pay for Appellant's son's tuition.

### B. Second Sufficiency Issue – Unapproved Purchases & Bank Transfers

The fourth issue raised by Appellant in her Concise Statement specifically alleged the evidence was insufficient to support the jury's unanimous finding, "that [Appellant] was the individual making the unapproved purchases underlying the counts pertaining to bank transfers." (*See* "1925(b) Concise Statement" ¶ 4, 6/1/17.) For the reasons that will follow, the evidence presented at trial was sufficient to support the jury's unanimous verdict.

The instant Opinion, in its weight of evidence discussion in Section II, *supra*, discussed and cited the evidence that was presented at trial regarding Appellant's illegal and unauthorized financing of her personal credit card purchases via the dental practice's business bank accounts. In doing so, Section II also makes it clear the evidence was sufficient to support the jury's verdict with respect to the same. At no time did Victim authorize Appellant to open a Capital ●ne or Barclaycard credit card for the dental office, nor did she authorize Appellant to do so with Victim's dental practice listed on either card. (N.T. –

53

Jury Trial at 549-50, 552.) Nor did Victim authorize Appellant to use dental office funds to pay for the personal purchases Appellant made on said credit cards. (*Id.*) Moreover, Detective Robert Wilsbach's extensive investigation into Appellant's fraud, which included several search warrants being served on the companies with which Appellant made these unauthorized purchases, provided evidence of these unauthorized purchases. (*See id.* at 576-08, 621-03.) With these seized records, the detective was able to match the funds withdrawn from the dental office bank accounts to Appellant's personal purchases, and was able to determine in conjunction with other evidence and witness statements that Appellant did, in fact, pay off her personal credit card expenses using office funds. Therefore, the evidence was sufficient to support Appellant's guilty verdict with respect to the illegal and unauthorized use of Victim's business funds to pay for Appellant's personal purchases.

### III. THE RESTITUTION IN THIS MATTER WAS APPROPRIATELY CALUCLATED AFTER A FULL RESTITUTION HEARING WAS HELD.

The fifth issue raised by Appellant in her Concise Statement alleged the order of restitution was, "inappropriately calculated for the reasons summarized by trial counsel during sentencing, *i.e.*, the Royal Caribbean cruise charges, the $1,900[.00] credit, the $2,200[.00] credit[,] and the postal charges[.]" (*See* "1925(b) Concise Statement" ¶ 5, 6/1/17.) For the reasons that will follow, the order of restitution was properly calculated after a full restitution hearing was held at the time of sentencing.

"Upon conviction for any crime wherein property has been stolen, converted or otherwise unlawfully obtained, or its value substantially decreased as a direct result of the crime, or wherein the victim suffered personal injury directly resulting from the crime, the offender shall be sentenced to make restitution in addition to the punishment prescribed therefor." 18 Pa. C.S.A. § 1106(a) (West 2017). Section 1106 further provides, "[t]he court shall order full restitution:"

> Regardless of the current financial resources of the defendant, so as to provide the victim with the fullest compensation for the loss. [...] The court shall not reduce a restitution award by any amount that the victim has received from an insurance company but shall order the defendant to pay any restitution ordered for loss previously compensated by an insurance company to the insurance company.

54

§ 1106(c)(1). Rule 705.1 begins with, "[a]t the time of sentencing, the judge shall determine what restitution, if any, shall be imposed[,]" and follows with the procedure for imposing restitution. Pa. R. Crim. P. 705.1.

"A court must ensure […] that the record contains the factual basis for the appropriate amount of restitution." *Commonwealth v. Pleger*, 934 A.2d 715, (Pa. Super. 2007) (citing § 1106) (other citation omitted). "Although restitution does not seek, by its essential nature, the compensation of the victim, the dollar value of the injury suffered by the victim as a result of the crime assists the court in calculating the appropriate amount of restitution." *Commonwealth v. Burwell*, 58 A.3d 790 (Pa. Super. 2012), *reargument denied, appeal denied* 69 A.3d 242 (Pa. 2013) (citing *Pleger*, 934 A.2d at 720) (other citations omitted). "The amount of a restitution order is limited by loss or damages sustained as a direct result of [a] defendant's criminal conduct and by the amount supported by the record." *Commonwealth v. Dohner*, 725 A.2d 822 (Pa. Super. 1999) (citation omitted). "The sentencing court applies a 'but for' test in imposing restitution; damages which occur as a direct result of the crimes are those which would not have occurred *but for* the defendant's criminal conduct." *Commonwealth v. Poplawski*, 158 A.3d 671, 674 (Pa. Super. 2017) (emphasis added) (citations removed). Moreover, "the amount of restitution ordered by trial court [must be] supported by the record and […] neither speculative nor excessive[.]" *See Commonwealth v. Rush*, 909 A.2d 805, 810 (Pa. Super. 2006), *reargument denied* (internal citations omitted).

Instantly, the $29,639.24 in restitution payable to Victim, which was ordered after a full Restitution Hearing, is supported by the record and is neither speculative nor excessive. *(See generally* N.T. – Sentencing & Restitution, 4-43; *see also* N.T. – Jury Trial at 280-308.) Specifically, the trial court reviewed the entire record from the five (5)-day jury trial, heard argument at the Restitution Hearing, and received further evidence at the same. *(Id.)* The trial court also awarded $25,000.00 in insurance company restitution, to which the Defense had no objections. *(See* N.T. – Sentencing & Restitution at 4-43, 4/19/17. Thus, the restitution was appropriately calculated and was neither speculative nor excessive.

## IV. THE FINAL JUDGMENT OF SENTENCE WAS APPROPRIATE AND NOT EXCESSIVE.

The sixth issue raised in Appellant's Concise Statement alleged the judgment of sentence was excessive, "in that the Commonwealth only sought 6 to 23 months incarceration plus 4 years of probation[.]" *(See* "1925(b) Concise Statement" ¶ 5, 6/1/17.) For the reasons that will follow the judgment of sentence, here, was not excessive.

A trial court's discretion in sentencing is broad, "and the reviewing court should not disturb [its] exercise of that discretion except for substantial reasons." *Commonwealth v. Widmer ("Widmer I")*, 667 A.2d 215 (Pa. Super. 1995), *reargument denied, appeal granted* 680 A.2d 1161, *reversed* 689 A.2d 211. Specifically, a sentence "will not be disturbed unless it is outside statutory limits or manifestly excessive so as to inflict too severe a punishment." *Commonwealth v. Phillips*, 601 A.2d 816, *appeal granted* 610 A.2d 45, *affirmed* 633 A.2d 604.

Finally, § 9781 outlines the right to appellate review of sentence as follows:

> [...] The defendant [...] may file a petition for allowance of appeal of the discretionary aspects of a sentence for a felony [...] to the appellate court that has initial jurisdiction for such appeals.

> [...] The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds: (1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously; (2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or (3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable. In all other cases the appellate court shall affirm the sentence imposed by the sentencing court.

> [...] In reviewing the record, the appellate court shall have regard for:

> (1)  The nature and circumstances of the offense and the history and characteristics of the defendant.
> (2)  The opportunity of the sentencing court to observe the defendant, including any presentence investigation.
> (3)  The findings upon which the sentence was based.
> (4)  The guidelines promulgated by the commission.

42 Pa. C.S.A. § 9781(b)-(d). "[W]hen reviewing sentencing matters, [the Superior Court] must accord the sentencing court great weight as it is in the best position to view defendant's character, displays of remorse, defiance or indifference, and overall effect and nature of crime." *Commonwealth v. Hanson*, 856 A.2d 1254 at 1260 (Pa. Super. 2004).

Here, Appellant's total sentence of 11.5 to 23 months' incarceration (with good time eligibility), followed by seven (7) years' total probation (terminable after four (4) years if restitution paid in full), was neither unreasonable nor excessive, given Appellant systematically stole and violated her employer's trust over a period of six (6) years in which a large amount of money was taken. (*See* N.T. – Sentencing & Restitution at 64-67.) The undersigned reviewed the notes of testimony from trial; Victim's impact statements; Appellant's PSI report; Appellant's children's unsigned letters; Dr. Wu's letter; and heard the testimony from Appellant's husband before ultimately deciding on the appropriate sentence. (*Id.* at 44-48.) As evinced in the PSI report, Appellant is financially stable with various assets and a large retirement savings account, which supported the Commonwealth's argument that, "[t]his wasn't a crime of necessity; this was a crime of opportunity and greed." (*Id.* at 50.) Furthermore, "this was not a one-time mistake. This was theft-after-theft, year-after-yea[r] deprivation from the business and Victim, her business bank accounts." (*Id.*) The trial court did not find the Defense's counter-arguments persuasive, such that Appellant is a good mother, a "good business partner", a good wife, and someone who did what they needed to do to get to a certain position in life who is a contributing member of society. (*Id.* at 55-56.) Moreover, the trial court could have sentenced Appellant on each Counts 1 through 3 (Theft by Unlawful Taking) to imprisonment, consecutively or concurrently, but only sentenced her to imprisonment on Count 1 (with good time eligibility) while reserving probation for the remaining two (2) counts. With that, the trial court found the total jail-time county sentence was appropriate and sentenced her accordingly.

Appellant received a standard range guideline sentence for each count. ("Order-Sentence/Penalty Imposed", 4/19/17.) Specifically, Appellant was sentenced on Count 1 (Theft by Unlawful Taking) to

11.5 to 23 months' incarceration, followed by one (1) year of probation consecutive to the expiration of parole. (*Id. See also* "Order-Sentence/Penalty Imposed", 4/19/17.) The guideline sentence for Theft by Unlawful Taking is three (3) to twelve (12) months' incarceration, plus or minus six (6) months. (N.T. – Sentencing & Restitution at 53.) On Counts 2 and 3 (Theft), Appellant was sentenced to three (3) years' probation consecutive to Count 1's probation and to each other, respectively. (*Id.* at 64-67; *See also* "Order-Sentence/Penalty Imposed", 4/19/17.) Counts 5, 6, and 7 (Receiving Stolen Property) merged with Counts 1, 2, and 3 (Theft by Unlawful Taking) for purposes of sentencing; though the guideline sentence for Receiving Stolen Property is restorative sanctions to nine (9) months, plus or minus six (6) months. (*Id.* at 49, 64-67; *See also* "Order-Sentence/Penalty Imposed", 4/19/17.)) The trial court imposed no further penalty for Count 9 (Forgery), though the guideline sentence for Forgery is restorative sanctions to one (1) month, plus or minus six (6) months. (*Id.*) Moreover, Appellant was made eligible for good-time credit whilst incarcerated, and her request for furlough for her daughter's November 11, 2017, wedding was also granted. (*Id.* at 68-69.) Finally, Appellant's supervision was made terminable after four (4) years provided restitution is paid in full. (*Id.*) Therefore, the trial court was within its discretion when it sentenced Appellant to a *total* sentence of 11.5 to 23 months' imprisonment in the county prison followed by seven (7) years of probation upon the expiration of her parole.

*The rest of this page was intentionally left blank.*

## CONCLUSION

Wherefore, Appellant's April 19, 2017, Judgment of Sentence and the trial court's denials of her post-sentence motions on May 4, 2017, and May 5, 2017, respectively, should be affirmed.

BY THE COURT:

_____
**GAIL A. WEILHEIMER,** J.

**Copy mailed on November 1, 2017, to:**
Superior Court Prothonotary
Defense Counsel, Thomas Burke, Esquire
DA's Office – Appellate Division
MCCF – Appellant, Jackie Singer, #17-01304

59